(Judges Haynes and Wildman of the sixth circuit sitting in places of Judges Norris and Donnelly.)

BOSTON GILSON, EXR., v. MARY A. GILSON.

CONSTRUCTION OF WILL.

A testator left all of his personal property and a life interest in his realty to his widow. The will provided that, after the death of the widow, the real estate should be sold by the executor and the proceeds divided into nine parts, eight of which were given to specified heirs and one part was left undisposed of. The widow elected not to take under the will and received her statutory allowances of dower and year's support. Upon the sale of the real estate by the executor under authority of the probate court: *Held*, (1) That the undevised one-ninth is first applicable to the payment of testator's debts in exoneration of the real estate that was devised; and (2) That as the will contains no provision for the blending into one fund of the personal property and the proceeds of the realty; but on the contrary treats the two as distinct classes of property and contemplates a sale of the realty only after the death of the widow, the doctrine of equitable conversion does not apply and the widow is not entitled to a distributive share in the proceeds of the realty after its sale. *Hutchings* v. *Davis*, 68 Ohio St. 160 [67 N. E. Rep. 251], distinguished.

[Syllabus by the court.]

APPEAL from Henry common pleas court.

Donovan & Dittmer, for plaintiff.

W. W. Campbell, Donovan & Warden, for defendant.

HURIN, J.

The essential facts in this case are agreed upon and are as follows:

The defendant, Mary A. Gilson, is the widow of David D. Gilson, deceased, who died, testate and childless, November 21, 1904.

The will of David D. Gilson gave to his widow, Mary A. Gilson, a life interest in all his real estate besides giving her all of his personal property which she was to have absolutely.

The will directed that the real estate be sold by the executor after the death of testator's wife and the proceeds divided among eight classes of heirs, one-ninth to each (leaving one-ninth undisposed of).

The widow elected not to take under the will and has received all of her statutory allowances of dower and year's support. The land has been sold by the executor, the personal property not being sufficient to pay the debts; all debts of the testator have been paid out of

Gilson v. Gilson.

the joint proceeds of the personal and real property and the widow now demands, in addition to what she has already received, her distributive share of the proceeds of the land considered as personal property. She also demands, as her husband's heir at law, the undevised one-ninth of his real estate or the proceeds thereof.

The debts now paid amounted to about the same amount as the proceeds of the one-ninth of the real estate which was undisposed of by will. The executor in this suit asks a construction of the will.

On the facts thus disclosed, two questions arise:

1. What disposition should be made of the one-ninth of the estate which was not disposed of by will?

2. Has the widow, having received in money the value of her dower interest in the land and of her year's support, the right to further demand a widow's share of the value of that real estate considered as personalty after its sale by the executor?

The first question presents no great difficulty. By Rev. Stat. 5972 (Lan. 9511) it is provided that when the "personal estate shall be insufficient for the payment of his debts, the undevised real estate shall be first chargeable with the debts, in exoneration, as far as it will go, of the real estate that is devised, unless it shall appear from the will, that a different arrangement of his assets, for the payment of his debts. was made by the testator; in which case they shall be applied for that purpose in conformity with the provisions of the will."

Under the provisions of the will of David D. Gilson, all the real estate was to be sold by the executor after the widow's death, all the personal property having been bequeathed to the widow, and the proceeds of said real estate were to be divided into nine parts, one of which was, by an apparent oversight, undisposed of—no special provision was made for the payment of debts out of any specific fund.

The assets in the executor's hands after the payment of the widow's allowance were not sufficient to pay the debts of the estate. The real estate was sold, not in conformity to the will, but necessarily sold in order to pay debts. The one-ninth of the estate being only equal to the amount of the debts, it is clear that, under the letter and spirit of Rev. Stat. 5972 (Lan. 9511), the portions actually disposed of by will should be exonerated from contribution to the payment of these debts, in so far as the portion undisposed of, will, together with the balance of the personal property, suffice to pay them. The widow therefore cannot claim as heir this portion undisposed of by will and require the legatees to contribute to pay the debts out of the portions devised or bequeathed to them.

Henry County.

But the second question is a more serious one.

The widow has already received in money the value of her dower interest in the real estate, as real estate. Is she also entitled to share in the proceeds of that same real estate after it has been sold, considering such proceeds personalty, and, by so doing, reduce the share of each legatee?

This question depends for its answer upon the preliminary question, whether the sale of the land by the executor changed its character and required the proceeds to be treated as personalty and not as real estate.

We are cited to the leading case of *Hutchings* v. *Davis*, 68 Ohio St. 160 [67 N. E. Rep. 251], where it is held:

"The positive direction by a testator to sell all of his real estate and to blend the proceeds with his personal property in one fund for the distribution of his whole estate according to the scheme of the will, makes an absolute conversion for all purposes into personal property, which should be distributed as personal property, even if the special object intended by the testator should fail.

"A widow for whom no provision is made in her husband's will and who has been paid the value of her dower in money from the proceeds of the sale of real estate, converted into personal property, pursuant to a direction in the will, is not thereby precluded from asserting and receiving the widow's distributive share in such proceeds, as well as in the other personal property of the testator."

That case and the one at bar are at first sight hardly distinguishable. While in the case at bar there was a provision in the will for the widow, yet she elected not to take under the will and, as to her, the will must be construed and executed as if she had not been mentioned in it.

There is, however, this serious difference between the two cases. In *Hutchings* v. *Davis, supra,* the will provided for the sale of all of the real estate within two years of testator's death, practically an immediate conversion into personalty.

In the case at bar the land was not by the terms of the will to be sold till after the death of the widow, who was to have a life interest in it as realty.

In *Hutchings* v. *Davis, supra,* the testator was not a married man at the time he made his will and he consequently made no provision whatever for his wife. In the case at bar the wife is not only provided for and given all the personal property *absolutely* (which was not therefore to be blended in one fund with the real estate), but she

Gilson v. Gilson.

is given a life interest in all the real estate, and it is only at her death that the intention to convert it into personalty was to be carried into effect and even then there was no provision for blending it with the personalty. In fact, however, it became necessary to sell it sooner to pay debts and it was so sold by the executor. Probably it might have been so sold by the executor even if its sale was not necessary to pay debts, for, the widow, having elected not to take under the will and having thereby waived her right to enjoy a life interest in the real estate, the reason provided by the will for postponing the sale of that real estate had failed, and, under the doctrine known as "accelleration," the executor might have sold the land in order to execute his trust and wind up the estate, even though the widow still lived.

But, even in that event, this case would have been clearly distinguishable from *Hutchings* v. *Davis*, for that depended upon the fact that, *by the terms of the will*, the real and personal property were directed to be blended in one fund, and the court held, Judge Shauck dissenting, that this amounted to an equitable conversion of the real estate into personalty.

Does this rule apply where, as in the case at bar, the will did not contemplate a conversion during the life of the widow and where the sale by the executor during the widow's life was only authorized by the necessity of paying debts or, after her waiver of the life estate, by the executor's wish to wind up the estate; and where there was no provision for the blending of the two kinds of property in one fund? Can the testator be said to have intended to effect an equitable conversion of his real estate into personalty when he expressly provides that, so far as the widow is concerned, she shall hold it and use it as real estate all the days of her life and that only at her death shall it be sold?

In the case of *Craig* v. *Leslie*, 16 U. S. (3 Wheat.) 563, 577 [4 L. Ed. 460], Washington, J., in his opinion, quotes with approval from *Fletcher* v. *Ashburner*, 1 Bro. Ch. Cas. 497, the doctrine that, "Nothing is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted." But while this is the settled law, it may well be doubted whether it can be held to apply for the benefit of one during whose lifetime the will directed the land to be held as land, and at whose death only the conversion was to be made. In the case of *Furgeson* v. *Stuart*, 14 Ohio 140, it

was held that "Land directed by a will to be sold and converted into money, is treated as personal estate," but there the will provided for an immediate conversion—no life estate intervened, nor were there any devisees of the realty, a very different case from the one at bar.

And, by statute, Rev. Stat. 6171 (Lan. 9712), "In all cases of a sale by an executor or administrator of part or the whole of the real estate of the deceased, under an order of court, * * * the surplus of the proceeds of the sale remaining on the final settlement of the account, shall be considered as real estate, and shall be disposed of accordingly."

And in the case of *Griswold* v. *Frink*, 22 Ohio St. 79, it was held that:

"The surplus of the proceeds of a sale of real estate by an administrator, remaining in his hands on the final settlement of his account, under the statute, is to be considered and disposed of as *real estate*, and the widow of the intestate is not entitled to any part thereof in her capacity as one of the distributees of the *personal* estate."

This decision has never been overruled unless by implication in *Hutchings* v. *Davis, supra.*

If, then, the land in the case at bar was sold by the executor under an order of court (as it was—the will itself so provides), and in order to pay debts, for this is the evident meaning of the statute as recognized by the court in the statement of facts in *Griswold* v. *Frink, supra*, the surplus of the proceeds of the sale must still be considered and disposed of as real estate and not as personalty.

And there seems to be especially good reason for applying this rule to this case. The testator, by giving to his wife a life interest in the real estate and providing for its sale only after the termination of that estate, shows that he thought of it only as real estate so far as she was concerned. By giving to her all his personal property and in addition to that, the life estate in the realty, he shows that he distinguished between personal and real property. He even thought of it as realty after it was sold, for he uses the word "devisees" in describing those among whom the proceeds were to be divided while he uses the two terms "devises" and "bequests" to describe respectively the devise of the real estate to the other heirs and the bequest of his personal property to his wife, thus showing that he recognized the legal significance of these terms and the distinction between them. Some importance is attached by counsel to the significance of the provision of the will of David D. Gilson that the devises to his bene-

Gilson v. Gilson.

ficiaries other than his wife shall be treated as debts. This is perhaps important as an aid to our conclusion for, if they are debts of the estate, then they must be paid by the executor and are not subject to distribution as assets of the estate. Hence, the widow would be entitled to no share in their proceeds.

There seems, therefore, to be especially sound reason for applying to this case the rule stated in the dissenting opinion of Judge Shauck in the case of *Hutchings* v. *Davis, supra,* where he says:

"The view seems to be (referring to the opinion of the majority of the court), that the testator was entrapped in the equitable doctrine of conversion. But that doctrine was devised, and it should be applied, to effectuate intention, not to defeat it. It may, therefore, be invoked by one who claims under an instrument, not by one who claims against it."

We have read with care numerous authorities cited by counsel for Mrs. Gilson to uphold the doctrine that a sale of real estate by an executor in accordance with the terms of a will is *per se* an equitable conversion of the realty into personalty.

In most, if not all, of the Ohio cases so cited this conclusion is reached from the peculiar language of the will there under discussion —the intention of the testator controlling. the decision of the case. While the rule probably differs in different states and it appears that in some of them the authorized sale of the land by the executor converts it, *eo instanti,* into personalty, such does not seem to be the rule in Ohio and is not, we think, founded on sound reason. Not even in *Hutchings* v. *Davis, supra,* is so broad a view endorsed.

But, while the rule laid down in *Hutchings* v. *Davis* is the final expression of the law of this state as applied to such a state of facts as was disclosed in that case, the courts of other states have shown great reluctance to recognize that rule; and particularly is this the case in the state of Pennsylvania.

In *Cunningham's Estate, In re,* 137 Pa. St. 621 [20 Atl. Rep. 714; 21 Am. St. Rep. 901], it was held that,

"Where a will directs the conversion of real into personal property, but the widow elects to take under the statute, her rights are fixed irrespective of the will, and she cannot claim that the conversion operated in her favor so as to entitle her to one-half the fund absolutely. As to her, the fund must be regarded as realty, and she is only entitled to a one-half interest therein for life."

And in that case it was said by Mitchell, J., in deciding the case:

" 'Election,' in the sense that applies to the present contention,

means 'a choice between two courses of action; acquiescence by the widow in her husband's disposition of his property, or disregard of it and assertion of the rights the law gives her.' There is no third or mixed course. Her legal rights, which are paramount to the husband's control, attach *eo instanti* that he dies, and there is no interval during which the will can slip in and work a conversion, and then stand aside to let in her intestate rights upon the converted estate. Conversion takes place by virtue of the will, but as to the widow so electing there is no will. She must make her choice and it is will or no will. * * * The law does not permit her to say there is a will for conversion, and no will as to her share. * * * The election which the widow is required to make is between rights, not between benefits.''

And in *Petterson, In re,* 198 Pa. St. 78 [45 Atl. Rep. 654], it was held that, ''A conversion worked by direction in a will to sell is inoperative as to the testator's widow, electing to take against the will.''

And in *Hoover* v. *Landis,* 76 Pa. St. 354, the same rule is announced, as follows:

''By her (the widow's) election the intestate laws superceded the will as to her, and excluded the power of conversion under the will so far as it affected her estate. Having declined to accept under the will, as to her there was no will and she could not claim her share of the proceeds of a sale by the executor, absolutely as personalty.''

And this seems also to be the rule in Kentucky, for in *Barnett* v. *Barnett,* 58 Ky. 254, it was held that:

''A widow, renouncing the provisions of her husband's will under the act of 1797 (2 Stat. at L. 1544), has a right of dower in lands which are directed by the will to be sold by the executor, and the proceeds paid to the devisees and being so entitled, she cannot claim an interest in them as personal estate, converted into that character by the terms of the will.''

And the same rule seems to apply in Tennessee. See *Armstrong* v. *Park,* 28 Tenn. (9 Humph.) 195.

In New York, too, the courts have taken the same stand, e. g., in *Brink* v. *Layton,* 2 Redf. (N. Y.) 79, it was held:

''An absolute direction in the will to sell real estate, since it affects an equitable conversion from the time of the testator's death, is inconsistent with a right of dower in the widow, and she should be put to her election whether to take a share of the proceeds of conversion or to claim dower.''

Gilson v. Gilson.

And in *Asch* v. *Asch,* 113 N. Y. 232 [21 N. E. Rep. 70], the judge rendering the opinion said:

"Although there is no express language providing that the bequest to the widow shall be in lieu of dower, yet, where there is a manifest incompatibility between such provision and dower, it is held that she cannot take both, and is put to her election between them." Citing *Vernon* v. *Vernon,* 53 N. Y. 351; *Konvalinka* v. *Schlegel,* 104 N. Y. 125 [9 N. E. Rep. 868; 58 Am. Rep. 494]; *Zahrt, In re,* 94 N. Y. 605.

It thus appears that the rule as stated in *Hutchings* v. *Davis, supra,* is not in accordance with many excellent authorities in other states and that even that rule was based on a condition of facts not paralleled in the case at bar and cannot therefore fairly apply to this case.

It appears also that the evident intention of the testator in the case at bar as disclosed by his will was not to effect a conversion of his realty into personalty for the benefit of his widow. It is inconceivable that such a thought was in his mind when he executed this will. He expressly provides for her in a way utterly inconsistent with such a construction.

Under the well recognized rule of construction that the intention of the testator should control, as well as for the other reasons which we have stated, the finding of the court will be that the widow is not entitled to share in the proceeds of the realty.

Decree accordingly.

**Haynes** and **Wildman, JJ.,** concur.